UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BEAR CREST LIMITED LLC, an Idaho limited liability company; YELLOWSTONE BEAR WORLD INC., an Idaho corporation; VELVET RANCH LLC, an Idaho limited liability company; MICHAEL D. FERGUSON, an Idaho resident,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>STATE OF IDAHO; IDAHO TRANSPORATION DEPARTMENT, a, department within the State of Idaho; MADISON COUNTY, a political subdivision of the State of Idaho,<br><br>　　　　　　　　　　Defendants. | Case No. 4:18-cv-00469-CWD<br><br>**AMENDED MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Pending before the Court is Defendant Madison County's motion for summary judgment. In response, Plaintiffs assert that, pursuant to Fed. R. Civ. P. 56(d), they need additional time within which to conduct discovery to adequately respond to Madison County's motion.

**MEMORANDUM DECISION AND ORDER - 1**

The Court held oral argument on February 26, 2020, and took the motion under advisement. For the reasons explained below, the Court will grant Madison County's motion for summary judgment, and deny Plaintiffs' Rule 56(d) request.

## FACTUAL BACKGROUND

Plaintiffs Bear Crest Limited, LLC, Yellowstone Bear World, Inc., and Velvet Ranch, LLC (hereinafter "Bear World"), own certain real property near the intersection of U.S. Highway 20 and 4300 West in Madison County, Idaho, where they operate a tourist and entertainment attraction known as Yellowstone Bear World. (Dkt. 1). Until 2016, visitors to Yellowstone Bear World accessed the property from U.S. Highway 20 via a connection (the "Intersection") at Madison County Road 4300 West ("Bear World Road").

The Intersection was constructed upon land formerly owned by the Gideons, who deeded the land to the State of Idaho in November of 1973 by warranty deed. The Gideon Deed was part of a realignment that moved the point of the Intersection north on Highway 20. The Gideon Deed expressly reserved to the grantors: "Access to the County Road Connection." Bear World claims that the reservation of rights in the Gideon Deed created an easement or contract right in favor of the owner of the property. Bear World, as the successor in interest to the Gideons, now owns the property and all access rights and related easements.

U.S. Highway 20 is maintained as a state highway as part of the state highway system and is regulated and controlled by the Idaho Transportation Department ("ITD"). *See* Aff. of Allen, ¶ 2–3 (Dkt. 41-4 at 2); *see also* Aff. of Weber, ¶ 3–6 (Dkt. 41-3 at 2).

**MEMORANDUM DECISION AND ORDER - 2**

In 2012, ITD made the decision to designate U.S. Highway 20 as a controlled-access road. Aff. of Allen ¶ 2. The designation of U.S. Highway 20 as a controlled-access road would eventually cause the closure of the Intersection. Aff. of Allen ¶ 3. Sometime during 2012, discussions ensued between Madison County, Bear World, and ITD regarding the possibility of constructing a slip ramp at the Intersection.[1] Madison County participated in these discussions to "help facilitate discussion and cooperation, however, the County never made any decisions regarding the intersection." Aff. of Weber ¶ 2.

Bear World entered into an Easement Agreement with Madison County on October 13, 2016, whereby Bear World granted an easement to Madison County for the purpose of "constructing, operating and maintaining a south bound vehicular slip ramp between the west side of U.S. Highway 20 and 4300 West." (Dkt. 48-1 at 1.) Plaintiff Michael Ferguson understood that ITD would provide funding and construct the project, while Madison County was to maintain the ramp. Decl. of Ferguson ¶ 7. (Dkt. 48 at 2.) The express terms of the Easement Deed provided that, if the slip ramp was not completed and open to the public before May 12, 2017, Madison County would restore the property to the same condition in which it existed on the date the easement was granted, and the easement would terminate. (Dkt. 48-1 at 2.) The deed's terms provided also that, if Madison County discontinued or abandoned use of the easement, the easement "shall terminate." (Dkt. 48-1 at 1.)

---

[1] It is not clear from the record exactly when these discussions occurred.

**MEMORANDUM DECISION AND ORDER - 3**

According to Madison County Commissioner Jon Weber, proposals for a slip ramp were ultimately rejected by the ITD. In 2016, ITD closed the Intersection and terminated access to Yellowstone Bear World at the Intersection. Aff. of Weber ¶ 4; Aff. of Allen ¶ 3.[2]

Upon learning of ITD's decision to restrict access to Yellowstone Bear World from U.S. Highway 20 at 4300 West, Madison County constructed a frontage road, at its own expense, from the exit at Burton Loop Road directly to Bear World's property to ensure Bear World would still have access to its property.[3] Aff. of Weber ¶ 5. According to both Commissioner Weber and Wade Allen, the District Engineer for ITD, Madison County neither made the decision nor had the authority to make the decision to designate U.S. Highway 20 as a controlled-access road. Aff. of Allen ¶ 4; Aff. of Weber ¶ 6. According to Madison County Commissioner Jon Weber's understanding, ITD alone has the authority to regulate and restrict access on state highways, and ITD is the ultimate decision-maker. Aff. of Weber ¶ 3. Commissioner Weber explained in his affidavit that Madison County may communicate and cooperate with ITD in the decision making process, but the County does not have decision-making authority with respect to designating a state highway as a controlled-access road. *Id.*

---

[2] The specific date of the closure is not in the record.
[3] Mr. Weber characterizes the access as "reasonable." However, whether the frontage road provided reasonable access is in dispute. Also, it is not clear from the record precisely when or why Madison County made the decision to construct the frontage road.

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff Ferguson states in his Declaration that the existing highway interchange is nearly three miles away from the historic access point, and that since the closure of the Intersection, "many visitors have called in confusion at the closed intersection and have not known how to access" Yellowstone Bear World. Decl. of Ferguson ¶ 14. Bear World contends, therefore, that the frontage road does not constitute reasonable alternative access.

Bear World filed its complaint on October 24, 2018, arising out of its desire for continued access to its property via the Intersection. (Dkt. 1). The complaint alleges the following claims against Defendants State of Idaho, Idaho Transportation Department, and Madison County: (1) inverse condemnation under Article I Section 14 of the Idaho Constitution and the Fifth Amendment to the United States Constitution; (2) violation of Plaintiffs' substantive due process rights pursuant to 42 U.S.C. § 1983 and Article I, Section 13 of the Idaho Constitution; (3) violation of Plaintiffs' procedural due process rights pursuant to 42 U.S.C. § 1983 and Article I, Section 13 of the Idaho Constitution; and (4) breach of contract based upon violation of the Gideon deed restriction.

Both the State Defendants and Madison County filed motions to dismiss. The Court granted the State of Idaho and ITD's motion to dismiss without prejudice, finding that the Eleventh Amendment barred Plaintiffs' claims against them in Federal Court. The Court denied Madison County's motion to dismiss, finding the allegations in the complaint satisfied the *Iqbal/Twombly* standard, and also that *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) no longer provided a basis for dismissal in light of *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct.

**MEMORANDUM DECISION AND ORDER - 5**

2162 (2019).[4] Because the matter was before the Court on a motion to dismiss, the decision was limited to whether the facts as plead in the complaint stated a plausible claim for relief under the theories alleged.

Madison County now raises three arguments in support of its motion for summary judgment: (1) the first, second, and third claims for relief asserted against Madison County fail as a matter of law, because the County lacks the legal authority to regulate state highways, and therefore could not effect a taking; (2) the actions taken by Madison County fail to reach the level of a taking, because the alternative access was reasonable; and (3) Madison County was not a signatory to the Gideon deed, and therefore the breach of contract claim fails as a matter of law.

Bear World argues Madison County's motion is premature, and should be continued until discovery is conducted[5] regarding the County's involvement in the decision to close the Intersection. Bear World argues that, in light of Madison County's involvement in ITD's decision to designate Highway 20 as a controlled-access road, it can be held responsible, together with ITD, for its role in substantially impairing Bear World's public access rights. Additionally, Bear World asserts the issue of whether it was

---

[4] *Williamson* held that a takings claim was not ripe until the property owner had unsuccessfully attempted to obtain just compensation through the procedures provided by the state. 473 US. at 194-95. However, the United States Supreme Court in *Knick* overruled *Williamson,* eliminating the state litigation requirement which, for 34 years, constituted a prerequisite prior to filing suit in federal court for a takings claim.

[5] The deadline for completion of fact discovery is June 30, 2020, and the dispositive motion deadline is January 22, 2021. (Dkt. 39.) According to Madison County, Bear World has not yet conducted formal discovery in this matter. At the hearing, Bear World confirmed Madison County's representation.

**MEMORANDUM DECISION AND ORDER - 6**

provided reasonable alternative access to Yellowstone Bear World's tourist attraction is an issue of fact that cannot be resolved on summary judgment.

## DISPOSITION

**1. Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 7**

## 2. Madison County's Liability for a Taking

Madison County argues that it could not, as a matter of law, effect a taking under either federal or state law because it lacks authority or control over the regulation and administration of state highways in Idaho. Consequently, Madison County asserts the first, second, and third claims for relief set forth in the complaint fail to set forth facts establishing a claim against Madison County. In response, Bear World argues it requires additional discovery to adequately respond to Madison County's motion, because its claims hinge upon the collaboration between ITD and the County in the decision to close the Intersection. In reply, Madison County argues that Bear World has not indicated what undiscovered facts are essential to oppose the County's motion for summary judgment.[6]

Fed. R. Civ. P. 56(d) allows litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion. *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). The party requesting a Rule 56(d) continuance must submit affidavits showing that: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary

---

[6] Madison County raises an argument that Bear World's request is disingenuous and untimely, as the Court granted a joint request for extension of time to allow Bear World to respond to the motion for summary judgment. (Dkt. 43.) The Court allowed an additional thirteen days within which to respond. Bear World did not indicate it wished to conduct further discovery at that time. As to Madison County's claim of untimeliness, Bear World's belated response to the motion for summary judgment was filed after Madison County had filed its reply in support of its motion, and before the Court could address Bear World's timely second request for extension of time. The Court addressed Madison County's argument that Bear World's response was untimely filed by granting Bear World's second request for extension of time.

**MEMORANDUM DECISION AND ORDER - 8**

judgment. *Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Failure to comply with the requirements of Rule 56(d) is a proper ground for denying discovery and proceeding to summary judgment. *Campbell*, 138 F.3d at 779.

The Court agrees with Madison County that, in this case, the Declarations of Michael Henderson and Scott Lilja do not meet the Rule 56(d) requirements, because the sought-after facts, even if true, are not essential to oppose summary judgment.[7] Madison County's active participation in ITD's decision to close the Intersection would not preclude summary judgment, because state law grants exclusive authority to ITD to regulate state highways, and presumes the County's cooperation in that process.

ITD is an executive department of the State of Idaho. Idaho Code § 40-501. The Idaho Transportation Board serves as the head of the ITD, and ITD acts through the decisions of the Board.[8] Idaho Code §§ 40-501, 40-310. Idaho law provides that, "[a]ll state highways shall be maintained by the department at state expense…." Idaho Code § 40-502. According to Idaho Code § 40-310(1), the Idaho Transportation Board "shall [d]etermine which highways in the state, or sections of highways, shall be designated and

---

[7] Madison County asserted also an evidentiary objection to Ferguson's declaration, arguing that Ferguson's statements are conclusory, and that there is no foundation showing actual participation in the discussions he purports to have knowledge of. The Court declines to address the evidentiary objection in light of its determination that the declaration does not meet Rule 56(d)'s requirements.

[8] Because ITD acts through the decisions of the Board, references to the Board are interchangeable with ITD for purposes of the Court's discussion. *See* Idaho Code § 40-310 (describing powers and duties of the Idaho Transportation Board); Idaho Code § 40-501 (designating the Idaho Transportation Board as the head of the ITD).

**MEMORANDUM DECISION AND ORDER - 9**

accepted…as part of the state highway system." The Board shall also "[d]esignate state highways, or parts of them, as controlled-access facilities and regulate, restrict or prohibit access to those highways to serve the traffic for which the facility is intended." Idaho Code § 40-310(9). And, the Board has the power to "[p]urchase, exchange, condemn or otherwise acquire, any real property, either in fee or in any lesser estate or interest, rights-of-way, easements and other rights and rights of direct access from the property abutting highways with controlled access, deemed necessary by the board for present or future state highway purposes." Idaho Code § 40-311.

To effectively exercise its regulatory powers, the Board is authorized to engage in cooperative efforts with counties, cities, and highway districts. *See* Idaho Code § 40-317 (setting forth the various powers and duties the Board may utilize to cooperate with various stakeholders of the state highway system). Further, state law requires the Board to "consult with the local agencies affected specifically on site plans and design of transportation systems within local jurisdictions." Idaho Code § 67-6528. Nonetheless, local land use planning ordinances "shall not apply to transportation systems of statewide importance as may be determined" by the Board. Idaho Code § 67-6528.

The statutory scheme set forth above makes clear that ITD retains the exclusive control over state highways. *Wylie v. State of Idaho, Idaho Transportation Board*, 253 P.3d 700, 707 (Idaho 2011). However, a municipality, such as Madison County, has the authority under the Local Land Use Planning Act to create specific development standards regarding roadways, rights-of-way, grades, alignments and intersections. *Id.* (citing Idaho Code § 67-6518). To the extent that these powers may overlap, a city or

**MEMORANDUM DECISION AND ORDER - 10**

county "is prohibited from directly regulating ITD in its administration of state highways." *Id.* (citing Idaho Code § 67-6528). But, ITD is required to consult with local agencies pursuant to Idaho Code § 67-6528 when ITD makes decisions. *Id.*

Thus, the state legislature has clearly evidenced an intent that state highways, which includes U.S. Highway 20, are under the sole control of ITD. Pursuant to state law, only ITD had the authority to designate U.S. Highway 20 as a controlled-access road, and thereby remove access to Yellowstone Bear World via the Intersection. ITD was required by statute to cooperate with Madison County. But, ITD's cooperation with the County, and the County's involvement in the decision-making process, does not nullify the statutory grant of authority to ITD to make the ultimate determination designating U.S. Highway 20 as a controlled-access road.

Because only ITD was empowered, by statute, to make the decision to designate U.S. Highway 20 as a controlled-access road, and thereby eliminate access to Yellowstone Bear World via the Intersection, nothing that Madison County did here can constitute a taking. The decision by ITD is the decision Bear World contends constitutes a taking requiring compensation under federal and state law.

Nonetheless, Bear World advances a "joint takings" theory, arguing that Madison County's participation in concert with ITD provides a basis for liability. But the literal text of the Takings Clause cannot be so stretched. The Takings Clause of the Fifth Amendment "requires compensation where government takes private property 'for public use.'" *Lingle v. Chevron*, 544 U.S. 528, 542 (2005). The "paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private

**MEMORANDUM DECISION AND ORDER - 11**

property." *Id.* at 537. The clause "implicitly recognizes a governmental power" to take property for public use "while placing limits upon that power" by requiring that the government pay just compensation for any private property that it takes. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 735 (2010) (Kennedy, J., concurring in part and concurring in the judgment).

Here, only ITD could effect a taking, because only ITD had the authority to designate Highway 20 as a controlled-access road.[9] Thus, discovery of relevant information Madison County may have vis-à-vis ITD's decision to designate U.S. Highway 20 as a controlled-access road, and Madison County's cooperation in that process, will not change the Court's conclusion that, as a matter of law, Madison County cannot be held responsible for what was ultimately ITD's decision to make. Accordingly, summary judgment will be granted to Madison County with respect to Bear World's first, second, and third claims for relief.

The Court declines, therefore, to address Madison County's alternative argument that the designation of U.S. Highway 20 does not reach the level of a taking because the newly constructed frontage road constitutes reasonable alternative access. That question is not before the Court, given its conclusion that Madison County cannot, under the facts present here and the applicable statutory authority granted to ITD, be responsible for a taking. Because the claim for relief under the takings clause of either the United States

---

[9] The Court has not found, and Bear World has not cited, any authority to support its novel joint takings theory.

**MEMORANDUM DECISION AND ORDER - 12**

Constitution or the Idaho Constitution is properly brought against ITD in state court,[10] it is incumbent upon ITD to demonstrate that no compensable taking occurred if Bear World's property right was not destroyed or substantially impaired and the remaining access is reasonable. *See State of Idaho Transp. Bd. v. HI Boise, LLC*, 282 P.3d 595, 599 (Idaho 2012) (explaining defense to takings claim under Idaho law). This is true even if Madison County was the entity responsible for constructing the frontage road at its expense from the exit at Burton Loop Road.

3.     **Breach of Contract Claim**

To be entitled to damages for breach of contract, a plaintiff must plead and prove (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages. *Path to Health, LLP v. Long*, 383 P.3d 1220, 1227 (Idaho 2016). Bear World's breach of contract claim asserts that the Gideon Deed constitutes the contract pursuant to which "defendants agreed to the continuing right to access the Property and for the Property to access U.S. Highway 20 through the Intersection." There is no dispute that the signatories to the Gideon Deed are the State of Idaho, by and through the Idaho Board of Highway Directors,[11] and Bear World, as successor in interest to the Gideons. Compl. Ex. A. Madison County was not a party to

---

[10] The parties informed the Court during the hearing that Plaintiffs filed suit against the State of Idaho and ITD in state court after the Court had granted the State Defendants' motion to dismiss without prejudice. (Dkt. 34.)

[11] The Idaho Board of Highway Directors, of the Department of Highways, was the predecessor to the Idaho Transportation Board and the Idaho Transportation Department. *See City of Boise City v. Idaho Bd. of Highway Directors of Dep't of Highways*, 486 P.2d 1015 (1971); Idaho Code § 40-501 (noting adoption of statute in 1985).

**MEMORANDUM DECISION AND ORDER - 13**

the contract Bear World claims was breached, and therefore cannot be held liable. *RS-ANB Fund, LP v. KMS SPE LLC*, No. 4:11-CV-00175-BLW, 2011 WL 5352433, at *9 (D. Idaho Nov. 7, 2011) ("An individual who is not a party to an agreement cannot be liable for its breach"); *Triad Leasing & Fin., Inc. v. Rocky Mt. Rogues, Inc.*, 224 P.3d 1092, 1097 (Idaho 2009) ("Because Seller was not a party to the Agreement, it could not be liable for breach of the Agreement.").

Bear World has introduced an Easement Deed entered into between Bear Crest Limited, LLC, and Madison County, executed on October 13, 2016, claiming that the County "unilaterally reneged on the agreement and refused to perform its requirements under the agreement." Decl. of Ferguson ¶ 9. (Dkt. 48 at 3.) However, the issue of whether the terms of the Easement Deed were breached is not before the Court, because its breach was not pled in the Complaint, and the time for amending the complaint has long since passed. (Dkt. 40.)[12]

To the extent Bear World relies upon the Easement Deed as evidence of Madison County's participation in the decision making process to convert Highway 20 into a controlled-access road, its reliance misses the mark, as discussed above. The action constituting the taking, and triggering an obligation to pay compensation, is restricted to ITD's decision alone. Instead, the relevance of the Easement Deed appears limited to whether Bear World was provided with reasonable alternative access, which may be used

---

[12] The deadline for amended pleadings and joinder of parties was October 31, 2019. Madison County filed its motion for summary judgment on November 19, 2019. At the hearing, Bear World confirmed it did not intend to raise a breach of contract claim based upon breach of the terms of the Easement Deed.

**MEMORANDUM DECISION AND ORDER - 14**

to demonstrate that a compensable taking did not occur. *See HI Boise, LLC*, 282 P.3d at 599 (Idaho 2012) (explaining a compensable taking does not occur if remaining access is reasonable).

Because Madison County was not a party to the Gideon Deed, Madison County is entitled to summary judgment on Bear World's fourth claim for relief.

## CONCLUSION

The Court will grant Madison County's motion for summary judgment. Even assuming Madison County cooperated with, and participated in discussions with ITD, such activity would not form the basis for a takings claim under either the United States Constitution or the Idaho Constitution where state law grants exclusive control to ITD over state highways. ITD's control includes the decision to designate state highways, or parts of them, as controlled-access facilities. And, because Madison County was not a party to the Gideon deed, it cannot, as a matter of law, be liable for its breach. Thus, further discovery is not essential, and would not assist Bear World in opposing summary judgment.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' Rule 56(d) Request is **DENIED**;

2) Defendant's Motion for Summary Judgment (Dkt. 41) is **GRANTED**, and judgment will be entered in favor of Defendant Madison County.

DATED: March 9, 2020

Honorable Candy W. Dale
United States Magistrate Judge